UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MEGAN J. SULLIVAN, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CASE NO. 1:21-cv-142 ) |
| DEXTERA CORPORATION, | ) ) |
| Defendant | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND REQUEST FOR TRIAL BY JURY***

Comes now Plaintiff Megan J. Sullivan ("Sullivan"), by counsel, and for her Complaint against Defendant Dextera Corporation ("Dextera"), alleges and says:

### I.  FACTUAL ALLEGATIONS

1. Sullivan is a resident of the State of Indiana, and is domiciled in Indianapolis, Marion County, Indiana.

2. Sullivan worked for Dextera at a location in Indianapolis, Indiana.  Sullivan was hired in March 2020, but did not begin work for Dextera until June 1, 2020.  Dextera is headquartered in the State of Virginia.  On its website, Dextera describes itself as providing "quality professional services to Government customers and contractors" and calls itself "a leading provider of program management for records, document, quality assurance, and industrial facilities management.  One of Dextera's government clients is the U.S. Department of Veterans Affairs ("VA").

3. Sullivan worked for Dextera as a Quality Clerk from June 1, 2020 until the date of her wrongful termination on July 8, 2020.  Sullivan worked for Dextera in a building it

shared with another contractor called "Iron Mountain" that was also performing work for the VA.  The building is located at 4200 Industrial Boulevard, Indianapolis, Indiana 46254.  Iron Mountain provides records services to the VA.  In her job, Sullivan was providing quality control and auditing services to the VA.  Much of Sullivan's job duties required Sullivan to audit the work of Iron Mountain employees.

4. Sullivan's immediate supervisor in Indianapolis was Kathleen Everhart.  Sullivan's manager was Justin Gilliard, who worked from an office in Virginia.

5. For the first weeks, Sullivan enjoyed her work and she performed well in the job.

6. On June 22, 2020, in the morning, Sullivan was performing her quality control work for Dextera in the building's warehouse.  Sullivan was going through discarded VA records to make sure original confidential VA records were being handled properly.  While standing in front of a row of 95 gallon bins and going through discarded records, Sullivan was approached by an Iron Mountain employee named Lincoln Ridge. Mr. Ridge walked toward and past Sullivan.  He then approached Sullivan from behind, grabbed her waist and thigh and pressed himself against her buttocks and body.  Sullivan was very offended, because Mr. Ridge pressed himself in a way that Sullivan felt his arousal.  Moreover, in this very large warehouse, there was so much space that there was no reason Mr. Ridge had any business being in any physical proximity of Sullivan.

7. Sullivan quickly moved away from Ridge and left the warehouse after Ridge sexually battered her.  The event upset Sullivan very much.  She went to the bathroom and cried.  Sullivan then went to her Dextera office area.  At the office, shortly after the event,

Sullivan reported Lincoln Ridge's sexual assault against her to Sullivan's supervisor, Kathleen Everhart.  Ms. Everhart contacted their manager, Justin Gilliard, to report Sullivan's complaint about Lincoln Ridge, although Sullivan later learned from Mr. Gilliard that Ms. Everhart had downplayed the seriousness of the incident to Mr. Gilliard during the phone call.

8. Later in the day, Kathleen Everhart told Sullivan that she had talked to Lincoln Ridge about Sullivan's report and that Mr. Ridge apologized and Mr. Ridge said he didn't realize he had made Sullivan uncomfortable.  Ms. Everhart then wrote an email to Sullivan (copied to Justin Gilliard).  In the email, Ms. Everhart tried to downplay the seriousness of the event and of Megan Sullivan's sexual harassment complaint against Lincoln Ridge.

9. At the end of that same day, June 22, 2020, Lincoln Ridge and a male coworker, walked out of the building at the same time as Sullivan.  Mr. Ridge laughed at Sullivan and appeared to be making comments about her to the male coworker.

10. Dextera took no action to protect Megan Sullivan from future sexual assault or harassment by Lincoln Ridge as a result of Sullivan's report.  Dextera did not demand that Iron Mountain, the company with which it shared a building and VA contractor work, fire Lincoln Ridge, remove Ridge from the building, or discipline Lincoln Ridge in any way.  Dextera did not investigate Sullivan's sexual assault complaint about Lincoln Ridge, nor did it ask Iron Mountain to do so.

11. Sullivan learned that her immediate supervisor, Kathleen Everhart, had worked for Iron Mountain just before taking the supervisor job with Dextera.  Sullivan learned that Everhart's supervisor at Iron Mountain had been Lincoln Ridge.  Sullivan believes this relationship between Everhart and Ridge is the primary reason she was subjected to hostility,

retaliation and termination.

12. Sullivan was not happy with her supervisor's response to her complaint against Lincoln Ridge. Sullivan directly contacted Justin Gilliard, her manager in Virginia, to recount her entire complaint against Lincoln Ridge. Mr. Gilliard responded only by telling Sullivan to contact Dextera's human resources department, which she did.

13. Sullivan spoke by video conference call to Karen Craig, a Dextera human resources official based in Virginia. Ms. Craig was not helpful. During the call, Ms. Craig asked Sulllivan "why didn't you say something?" Sullivan had reported the attack to her supervisor right away. Craig told Sullivan, "maybe you need therapy." Ms. Craig then asked Sullivan, "What do you want me to do?" Sullivan told Ms. Craig that she didn't think Lincoln Ridge should be allowed to work around her or other women.

14. Karen Craig did nothing in response to her interview with Sullivan. Ms. Craig did not investigate and did not follow up with Sullivan.

15. Some days after her contact with Karen Craig, Sullivan approached Iron Mountain's Operations Manager, a man named Mike Murray, to ask for a meeting to talk about Lincoln Ridge. Mr. Murray initially set up a meeting for later that day, but Sullivan's supervisor, Kathleen Everhart, canceled that meeting. Shortly after being told the meeting with Mike Murray had been canceled, Sullivan did get a call from Karen Craig. Ms. Craig angrily scolded Sullivan over the phone for talking to the Iron Mountain manager, telling Sullivan "I told you to keep this confidential." Craig went on to tell Sullivan that she was not to speak to anyone at Iron Mountain. Obviously, Ms. Sullivan has a legally protected right to

make a sexual assault and sex harassment claim to the supervisors over Lincoln Ridge. Karen Craig ended the phone conversation by telling Sullivan that Dextera would investigate her complaint against Lincoln Ridge and give Sullivan results on July 22, 2020. Sullivan never heard back from Karen Craig or anyone else at Dextera. No investigation was conducted.

16. After learning that Sullivan had taken additional steps to make sex harassment complaints about Lincoln Ridge (to Justin Gilliard, to Karen Craig, and to Mike Murray), Kathleen Everhart became extraordinarily hostile toward Ms. Sullivan. For example, on two occasions on July 2, 2020, Everhart began screaming at Sullivan and telling her she was fired or subject to "immediate termination." Sullivan finished her work that day and tried to ignore Ms. Everhart's outbursts. That July 2, 2020 night, Sullivan called Justin Gilliard from her car and told him Everhart was trying to fire her. Mr. Gilliard told Sullivan that Everhart did not have the authority to fire her and that Sullivan should show up for work on Monday. (The office was closed on Friday, July 3, 2020 for the Fourth of July holiday).

17. Sullivan reported to work on Monday, July 6, 2020, but Everhart spent the day screaming and yelling at Sullivan. Everhart screamed at Sullivan to leave early and go home for the day. Sullivan stayed and worked until the end of her work day, but was at this point, extremely upset and stressed by her supervisor's hostile behavior and non-stop threats of firing her. Sullivan called in to work and used a sick day on July 7, 2020.

18. Sullivan did report to work on Wednesday, July 8, 2020. When Everhart arrived, Everhart began yelling at Sullivan. Sullivan was actually trying to send an email about Everhart's conduct to Justin Gilliard, their manager, when Everhart approached Sullivan and began to repeatedly demand that Sullivan tell her "Are you leaving?" and "Are you

quitting." When Sullivan resisted Everhart's demands that she quit or leave, Everhart contacted building security workers to seize Sullivan's employee identification badge and her work computer. Everhart then instructed the security guards to march Sullivan out of the building.

19. Sullivan again sought to contact Justin Gilliard to see if she had a job still or if Gilliard would intervene and help her, but Mr. Gilliard had refused to respond to Ms. Sullivan's communications. Ms. Sullivan learned later on July 8, 2020 that her access to her Outlook account for work had been canceled. Sullivan's coworker contacted her to tell her that Kathleen Everhart conducted a meeting and told employees that Sullivan was no longer with the company.

20. Lincoln Ridge was not fired. He was not disciplined. Dextera took no action to protect Sullivan or cure Sullivan's sexually hostile work environment. Instead, when Sullivan sought help and asked that action be taken, Dextera retaliated against Sullivan and terminated her employment. Dextera's response is inexcusable.

21. Dextera is liable under Title VII for its failure to properly respond to Sullivan's reports of sexual harassment and battery against Lincoln Ridge and its failure to protect Sullivan from additional acts of sexual harassment. Dextera created an unreasonable and extraordinarily hostile work environment that Sullivan could not be expected to work in. Dextera is certainly also liable for taking adverse and retaliatory action against Megan Sullivan, when it fired Sullivan for her complaint against Lincoln Ridge, a person Sullivan had to work with and around in order to do her job for Dextera.

22. Sullivan is pursuing claims of sexual harassment (failure to take action to cure a

hostile work environment), retaliation, and sex discrimination under Title VII of the Civil Rights Act of 1964. She is seeking all available damages, equitable relief, injunctive relief, and payment of her attorney's fees, costs and expenses.

## II.  JURISDICTION AND VENUE

23. This Court has jurisdiction over Sullivan's Title VII claims under 28 USC § 1331, as those Title VII retaliation and discrimination claims raise questions of federal law.

24. This Court is the appropriate venue for this cause of action as Sullivan lives and worked for Dextera in Marion County, Indiana, and most of the illegal activity took place in the Southern District of Indiana. 28 USC § 1391.

## III.  PARTIES

25. Sullivan is a resident of Indianapolis, Marion County, Indiana.

26. Dextera employed Sullivan at a location in Indianapolis, Marion County, Indiana.

## IV.  ADMINISTRATIVE PROCEDURES

27. Sullivan has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. Sullivan received her Notice of Right to Sue from the Equal Employment Opportunity Commission dated January 12, 2021.

## V. STATEMENT OF CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

28. Sullivan alleges and incorporates herein by reference paragraphs 1 through 27 above.

29. As detailed above, Dextera is liable for discriminating against Sullivan, for

retaliating against Sullivan, for allowing a hostile work environment to exist to Sullivan's detriment, particularly when the work environment was being made increasingly hostile by Sullivan's immediate supervisor after Sullivan reported Lincoln Ridge for sexual harassment, by failing to respond to Sullivan's reports and complaints about sex harassment against her, and for terminating Sullivan from employment, all in violation of Title VII of the Civil Rights Act of 1964. Dextera has intentionally and knowingly violated Sullivan's protected rights under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*.

30. As a direct and proximate result of Dextera's discriminatory and retaliatory practices, Sullivan has found it necessary to retain the services of an attorney and is therefore entitled to her reasonable attorney's fees, costs and expenses in this matter.

31. Sullivan is seeking from Dextera any and all available damages under Title VII, including, but not limited to, all back pay and benefits, front pay and benefits, all available compensatory and punitive damages, her attorney's fees, expenses and costs, and any and all other equitable relief available to Sullivan.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Sullivan respectfully requests that the Court enter judgment against Dextera, and issue to her all available relief, including, but not limited to, the following:

1. All damages available under Title VII of the Civil Rights Act of 1964, including all back pay and benefits, reinstatement or front pay and benefits, all available compensatory damages, all available punitive damages, any and all other equitable relief, and payment of her reasonable attorney's fees, costs and expenses;

2. All reasonable attorney's fees and expenses;

3. Costs;

4. Prejudgment interest, if available; and

5. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com

## REQUEST FOR TRIAL BY JURY

Comes now the plaintiff, Megan J. Sullivan, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP


By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.